148 So. 904

MOORE et al. v. LOUISIANA FIRE INS. CO. OF BATON ROUGE.

No. 32084.

May 29, 1933.

St. Clair Adams, of New Orleans, and Taylor, Porter & Brooks, of Baton Rouge, for appellant.

Laycock & Moyse, of Baton Rouge, for appellee.

LAND, Justice.

Plaintiffs constituted a commercial partnership, known as Louisiana Auto Top Company, and as such operated in the city of Baton Rouge from the latter part of the year 1930, until January 1, 1932, when the partnership was dissolved.

Defendant company issued a fire insurance policy in the sum of $6,600 in favor of "E. M. and E. J. Moore, doing business as Louisiana Auto Top Company," for one year, from January 1, 1931, to January 1, 1932, covering the stock of merchandise, and the machinery and equipment of said company contained in its shop, situated on North boulevard in the city of Baton Rouge.

The property insured was destroyed by fire July 24, 1931; the value of the stock of merchandise lost being estimated by said company at $6,150.02, and the value of the machinery and equipment at $1,576.45.

The present suit to recover the full amount of the policy, 12 per cent. as damages under Act No. 168 of 1908, and a reasonable attorney's fee, estimated as 20 per cent. of the policy, was filed in the lower court February 25, 1932.

Payment of plaintiffs' claim was resisted by defendant company because of alleged violations of the iron-safe clause, which contained the specific provision that it applied to stock items only.

In the lower court plaintiffs obtained judgment against defendant company in the sum of $1,500, the value of the equipment and machinery insured, with 5 per cent. interest per annum thereon from judicial demand until

paid, together with 12 per cent. as statutory damages, and 15 per cent. as attorney's fees.

From this judgment defendant company has appealed.

1. Plaintiffs admit that they did not produce an inventory and a set of books which showed the details of the business from July 1, 1931, to the date of the fire, July 24, 1931, a period covering about three weeks, and that such failure constitutes a breach of the iron-safe clause that would ordinarily bar recovery on the policy.

But, say plaintiffs, books were actually kept up to the date of the fire, but could not be produced because they were destroyed in the fire, and defendant company is estopped, under Act No. 222 of 1928, from invoking the iron-safe clause as a defense in this particular case, for the reason that said company well knew, at the date the policy was delivered to plaintiffs, that plaintiffs did not have an iron safe on the premises.

Conceding, for the sake of argument, that Act No. 222 of 1928 may be so construed, and that defendant company had the knowledge imputed to it by plaintiffs, it is clear that plaintiffs' plea of estoppel is not applicable to defendant company in this particular case.

Paragraph 3 of the iron-safe clause of the policy sued upon provides that: "The assured will keep such books and inventory, and also the last preceding inventory, if such has been taken, securely locked in a fire-proof safe at night, and at all times when the building mentioned in this policy is not actually open for business; *or, failing in this, the assured will keep such books and inventories in some place not exposed to a fire which would destroy the aforesaid building.*"

Although plaintiffs may have failed to keep their books and inventories in a fireproof iron safe on the premises, yet, had they kept them in some other safe place and produced them, it is clear that they would not have violated the iron-safe clause, by exercising such alternative right, and that they could recover upon the policy for the loss sustained.

But plaintiffs, in this case, kept their books and inventories neither in a fireproof iron safe nor in any other safe place, and are therefore barred from recovery for the stock and merchandise, because of the total breach of the warranty contained in the iron-safe clause.

2. Defendant company also contends that plaintiffs should not recover for the loss of their equipment and machinery in this case, because the policy does not cover different classes of property, separately valued, but only covers a stock of merchandise, equipment, and machinery, etc., *under one valuation,* thereby making the contract indivisible, and, if void in one part, it is void in whole.

There are two conflicting lines of decisions in this country as to the indivisibility of policies of insurance.

Some of the cases hold that a policy of insurance, the consideration of which is a premium in a gross sum, is entire and indivisible, though the contract insures different classes of property in separate amounts.

We departed from this line of decisions in Thompson v. State Assurance Co., 160 La. 683, 107 So. 489. At page 690 of that case in 160 La., 107 So. 489, 492, the court said:

"The defendant in the present case is bound by the terms of its policy contract. In that

contract it is expressly declared that the iron-safe clause applies *only to the item on stock.*

"As previously stated, there were three items insured with separate amounts opposite each item. The stock constitutes the first item, the fixtures the second item, and the household furniture the third item.

"Certainly if by the terms of the policy the provisions of the iron-safe clause were restricted to the stock or merchandise item, the defendant is in no position to claim a forfeiture of the entire policy on the ground of failure to comply with the clause stated."

We see no good reason why the ruling in the Thompson Case should not apply to the present case, in which the iron-safe clause is restricted *to the item on stock*, notwithstanding the fact that the stock of merchandise, and the equipment and machinery have been insured under *one valuation.*

This restriction still remains in the contract, regardless of the fact as to whether there be *one valuation* of the property insured, or whether different classes of the property insured are *separately valued.*

As equipment and machinery cannot be shut up in a fireproof iron safe, or be used continuously by the insured on his premises, and, at the same time, be placed in some other safe place, in the very nature of things, the iron-safe clause cannot apply to or affect the insurance on this class of property; and particularly is this the case when the iron-safe clause is expressly restricted in the policy to *items on stock.* Such restriction in itself necessarily renders the contract of insurance divisible by its own plain and unambiguous

terms, and it would be highly inequitable and unfair to the assured to read such restriction out of the contract merely because of the nature of the valuation placed upon the property by the insurance company. The valuation of the property insured, at all events, is susceptible of due ascertainment in case of loss.

"Forfeitures have never met with the special encouragement of courts. They must find support in law in a manner that leaves no doubts as to the right to their exercise." Lawrence v. Penn Mutual Life Ins. Co., 113 La. 87, 36 So. 898, 900, 1 Ann. Cas. 965; Gunther et al. v. N. O. Cotton Exchange Mutual Aid Association, 40 La. Ann. 776, 777, 5 So. 65, 2 L. R. A. 118, 8 Am. St. Rep. 554.

3. E. J. Moore, one of the plaintiffs, valued the machinery and equipment lost in the fire at $1,500, and stated that it was not a year old. It appears from his testimony that the larger part of the machinery and equipment was transferred to the Louisiana Auto Top Company at the city of Baton Rouge, La., from the Moore Auto Top Company at McGehee, Ark., which was closed out about January 1, 1931. In corroboration of his testimony, the witness produced an inventory taken by him of the machinery and equipment so transferred. In our opinion, the value of the machinery and equipment lost has been established with reasonable legal certainty.

4. After the fire, plaintiffs, the insured, made demand upon defendant company to furnish blank forms of statements and proofs of loss to them. Defendant company admits that it failed to do so. By such failure, the insurance company waived the requiring of any statement or proofs of loss at the hands

of the insured, who, nevertheless, furnished such proof in the form of an affidavit. Act No. 168 of 1908, § 2.

5. Defendant company also admits demand by plaintiffs for payment, which was not made within sixty days thereafter. Under section 3 of Act No. 168 of 1908 it is provided that: "Should the company fail to pay, within said time the amount due the insured under the policy after demand made therefor, such company shall be liable to pay the holder or holders of such policy in addition to the amount of the loss, 12 per cent damages on the total amount of the loss as may be determined by a court of competent jurisdiction together with all reasonable attorney's fees for the prosecution and collection of such loss."

Plaintiffs have answered the appeal and have prayed that the judgment appealed from be increased to plaintiffs' original demand, subject to a reduction in attorney's fees to 15 per cent., if the amount recovered is $2,000 or less, and to 10 per cent. should the amount awarded exceed $2,000, as agreed to on the trial of the case.

At page 104 of the transcript we find the following agreement: "It is agreed that if attorney's fees are recovered, a reasonable attorney's fee will be fifteen per cent (15%) if the amount recovered is $2,000.00 or less, and ten per cent (10%) of the amount recovered should the amount exceed $2,000.00."

The judgment is for the sum of $1,500, with 12 per cent. statutory damages, and 15 per cent. attorney's fees on that amount, and, in our opinion, is correct.

Judgment affirmed.